IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ALEXIS ADKINS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-26-335 |
| PHARMACANN INC., | * | |
| Defendant. | * | |

***

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant Pharmacann Inc.'s ("Pharmacann") Motion to Dismiss (ECF No. 10). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons outlined below, the Court will grant the Motion.

## I. BACKGROUND

### A. Factual Background[1]

Plaintiff Alexis Adkins[2] was employed as a part-time Budtender[3] with Defendant Pharmacann from approximately June 8, 2023, until October 16, 2023. (Am. Compl. ¶¶ 7,

[1] Unless otherwise noted, the Court takes the following facts from Plaintiff Alexis Adkins' Complaint (ECF No. 1) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

[2] Although Adkins' "genetic sex is female," Adkins "identifies as non-binary and uses the pronouns 'they' and 'them.'" (Am. Compl. ¶ 8, ECF No. 9). Accordingly, the Court will use they/them/their pronouns when referring to Adkins.

[3] The Amended Complaint and briefing contain no explanation as to Pharmacann's business, Adkins' job description and the responsibilities of a "Budtender," or what, if any, qualifications one needs to be employed as a Budtender. (See generally Am. Compl.).

18, ECF No. 9).

Adkins alleges that for the entirety of their five-month employment as a Budtender with Pharmacann, they "satisfied" Pharmacann's expectations by "diligently and expertly perform[ing] all tasks and essential duties provided to [them] . . . to [Pharmacann's] expectations and standards . . . without complaint or criticism." (Id. ¶¶ 10–11). In addition, Adkins asserts that they had "numerous five-star reviews and [were] repeatedly praised for [their] performance." (Id. ¶ 12). In fact, Adkins alleges that Pharmacann's "satisfaction with [Adkins'] work performance was so high" that Pharmacann "relied upon [Adkins] to train and assist other employees who had been promoted to more senior positions," (id. ¶ 13), including by "assist[ing] . . . male counterparts in completing basic tasks after the men had been promoted to full-time positions," (id. ¶ 30). According to Adkins, "[t]here was even discussion at one point with certain" members of management about "relying on [Adkins] to assist . . . in opening a new location in Las Vegas, Nevada." (Id. ¶ 13).

Despite their satisfactory job performance, however, Adkins alleges that Pharmacann "repeatedly passed [them] over for promotions and full-time positions" and instead promoted their "male counterparts, who had less experience and qualifications than" Adkins. (Id. ¶ 30). According to Adkins, "[t]he other men in the workplace who were given preferential treatment compared to" Adkins "were, upon information and belief, Budtenders of the same level of responsibility and duties as [Adkins], . . . were, supposedly, subject to the same standards and expectations as [Adkins], . . . were subject to the same management staff and supervisors as [Adkins], including [Adkins'] supervisor Thomas Maytas," and had "approximately the same level" of qualifications and experience

as Adkins. (Id. ¶¶ 32–33). In fact, Adkins alleges that at times, Pharmacann promoted "men with . . . less experience than [Adkins]" over Adkins "and then required [Adkins'] assistance and training to complete their work duties." (Id. ¶ 33).

During the entirety of their employment with Pharmacann, Adkins had a disability, (id. ¶ 14 ("Plaintiff, at all times relevant hereto, possessed physical and mental impairments that substantially limited [their] ability to perform one or more of their major life activities.")), because of which Pharmacann provided Adkins "with a reasonable accommodation" by giving them "breaks at reasonable times" and "a stool to sit," (id. ¶ 15).

Notwithstanding the accommodation, Adkins alleges that management "repeatedly criticized [them] at meetings," "called them 'unprofessional'" for "needing to use a stool as a reasonable accommodation," (id. ¶¶ 16, 43), and denied them "shifts at the back of the . . . workplace where [Adkins] would have been able to sit and work at a computer" or "shifts at the front desk," where Adkins could have "sat while completing their work" like the "other employees," (id. ¶¶ 31, 44). According to Adkins, these seated positions were "reserved for men" while the "women of the workplace, including [Adkins], were forced to work their entire shifts while standing." (Id. ¶ 31).

On October 13, 2024, Adkins worked their last shift at Pharmacann. (See id. ¶ 18). At some point after October 13, Adkins began volunteering with the AmeriCorps program ("AmeriCorps"). (Id. ¶ 19). Notwithstanding their volunteer commitments, however, Adkins "indicated to [Pharmacann] that [they]" were "still willing to work." (Id.).

Pharmacann, however, "never scheduled [Adkins] for a shift while they were volunteering with AmeriCorps." (Id.).[4]

In early February 2024, Adkins learned from Pharmacann's management that they "had been terminated due to an error in the system which occurred because [Adkins] had not worked a shift in a specified time frame" after their last shift on October 13, 2024. (Id. ¶ 17). When Adkins contacted Pharmacann's Human Resources department (the "HR department") around March 13, 2024, the HR department told them that according to their records, Adkins "had resigned on October 16, 2023, three days after [their] last shift on October 13, 2023." (Id. ¶ 18). This came as a surprise to Adkins, especially because they had indicated to Pharmacann that they were "willing to work" despite their volunteer commitments to AmeriCorps, (id. ¶ 19), and "other men had been allowed to miss months of work to attend rehabilitation on multiple occasions," while "their positions had been held open for them," (id. ¶ 20).

## B. Procedural History

On June 20, 2024, Adkins filed a Charge of Discrimination against Pharmacann with the Maryland Commission on Civil Rights ("MCCR"), which was cross-filed with the EEOC. (Id. ¶ 21). After receiving a Right to Sue letter, (id. ¶ 22), Adkins initiated this

[4] It is unclear from the Amended Complaint when Adkins began volunteering for AmeriCorps, when they informed Pharmacann about their upcoming volunteer commitments, whether they needed to and did indeed seek permission from Pharmacann before committing to volunteer, whether their volunteer commitments interfered with their ability to work a required number of hours or shifts at Pharmacann, who was generally responsible for scheduling shifts (Adkins or Pharmacann), whether Adkins attempted to schedule shifts between October 13, 2023, and early February 2024, and when Adkins' volunteer commitments with AmeriCorps ended. (See generally Am. Compl.).

action on January 27, 2026, (ECF No. 1), alleging gender discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), and the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't § 20-601, et seq. ("MFEPA") (Count I); disability discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"), and MFEPA (Count II); and retaliation under the ADA, 42 U.S.C. § 12203, et seq., and MFEPA (Count III). Adkins seeks monetary relief along with attorneys' fees and costs. (Am. Compl. at 9).[5]

On March 16, 2026, Pharmacann filed a Motion to Dismiss. (ECF No. 8). Two days later, Adkins filed an Amended Complaint. (ECF No. 9).[6] On April 1, 2026, Pharmacann filed a Motion to Dismiss Adkins' Amended Complaint. (ECF No. 10). Adkins opposed Pharmacann's Motion to Dismiss on April 8, 2026, (ECF No. 11), and Pharmacann filed its Reply on April 22, 2026, (ECF No. 12).

## II. DISCUSSION

### A. Standard of Review

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it

---

[5] Citations to the page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

[6] Adkins' Amended Complaint (ECF No. 9) supersedes their original Complaint (ECF No. 1) and thus renders Pharmacann's original Motion to Dismiss (ECF No. 8) moot. Carey v. Throwe, GLR-18-162, 2019 WL 414873, at *7 (D.Md. Jan. 31, 2019), aff'd, 957 F.3d 468 (4th Cir. 2020).

does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. See Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, including any documents attached or incorporated into the complaint, consider the factual allegations alleged therein as true, and construe the factual allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, see United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979) (finding dismissal of complaint proper because plaintiffs' "conclusory allegations" of discrimination were unsupported by

"reference to particular acts, practices, or policies"), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

## B. Analysis

Pharmacann asserts that Adkins' Amended Complaint must be dismissed because: (1) Adkins does not allege sufficient facts to demonstrate that their performance was satisfactory at the time of their termination under Title VII, the ADA, or the MFEPA[7] or that Pharmacann treated them differently from other similarly situated comparators (Counts I and II); and (2) Adkins fails to plead a causal nexus between their disability and their termination under either the ADA or MFEPA (Count III). (Mem. L. Supp. Mot. Dismiss Pl.'s Am. Compl. ["Mot."] at 6–11, ECF No. 10-1). For reasons explained below, the Court will grant Pharmacann's Motion as to all counts.

### 1. Count I– Gender Discrimination

Title VII of the Civil Rights Act prohibits status-based discrimination based on an employee's protected characteristics such as "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a); Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 346–48

---

[7] Like its federal analogue, MFEPA "prohibits discriminatory employment practices based on an individual's protected characteristics, including one's sex or disability." McGinnis v. Plamondon Enters., Inc., BAH- 25-2138, 2026 WL 221694, at *3 (D.Md. Jan. 28, 2026) (quoting Md. Code Ann., State Gov't § 20-606). Because MFEPA is "modeled on federal anti-discrimination legislation," Doe v. Catholic Relief Servs., 300 A.3d 116, 126 (Md. 2023), courts "largely apply federal precedent to employment discrimination claims brought under MFEPA" unless "the MFEPA materially departs from the language of" federal anti-discrimination statutes such as Title VII and the ADA. Watrous v. AIRtec, Inc., TJS-24-2076, 2025 WL 2494324, at *10 (D.Md. Aug. 28, 2025). Accordingly, the Court's analysis of Adkins claims brought under Title VII and the ADA will also apply to Adkins' MFEPA claims.

(2013); Strothers v. City of Laurel, 895 F.3d 317, 326–27 (4th Cir. 2018). A plaintiff can state a claim for disparate treatment by either direct evidence or through the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Haynes v. Waste Connections, Inc., 922 F.3d 219, 223 (4th Cir. 2019); see also Wannamaker-Amos v. Purem Novi, Inc., 126 F.4th 244, 255 (4th Cir. 2025).

Although a plaintiff need not "plead facts that constitute a prima facie case" to survive a motion to dismiss, they must nevertheless "allege facts sufficient to state all the elements of [their] claim." Price-Garrison v. Md. Dep't of Health & Mental Hygiene, 317 F.App'x 351, 353 (4th Cir. 2009) (citing Jorden v. Alt. Res. Corp., 458 F.3d 332, 346–47 (4th Cir. 2006)). In other words, the complaint must sufficiently allege facts that "'permit[] the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'" Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (citing Ashcroft v. Iqbal, 556 U.S. 662 (2009)), aff'd sub nom., Coleman v. Ct. of Appeals of Md., 566 U.S. 30 (2012). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Coleman, 626 F.3d at 190 (citing Bell Atl. Corp., 550 U.S. at 555).

Here, Adkins alleges a wrongful termination gender discrimination claim under the McDonnell Douglas framework; accordingly, Adkins must establish that: (1) they are a member of a protected class; (2) their "job performance was satisfactory at the time of the adverse employment action"; (3) they were "subjected to an adverse employment action"; and (4) "the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination." Hines v. LeafGuard Holdings Inc, LKG-25-306,

2026 WL 776078, at *6 (D.Md. Mar. 19, 2026) (first citing Coleman, 626 F.3d at 190; then citing Swaso v. Onslow Cnty. Bd. of Educ., 698 F.App'x 745, 747 (4th Cir. 2017)).

The parties do not dispute Adkins' membership in a protected class or that their termination constituted an adverse employment action.[8] Accordingly, the Court will focus its analysis on the second and fourth elements. Although Adkins successfully establishes satisfactory job performance, their gender discrimination claim must nonetheless be dismissed because they have failed to allege facts demonstrating that their termination occurred under "circumstances giving rise to an inference of unlawful discrimination." See id. Accordingly, the Court will grant Pharmacann's Motion as to Count I.

**a. Satisfactory Job Performance**

Adkins asserts that "at all times relevant hereto," they satisfied Pharmacann's expectations, (id. ¶ 27), because: (1) they "diligently and expertly performed all tasks and essential duties . . . to [Pharmacann's] expectations and standards . . . without complaint or criticism by [Pharmacann]," (id. ¶ 11); (2) they had "numerous five-star reviews and [were] repeatedly praised for [their] performance," (id. ¶ 12); (3) Pharmacann "relied" on them "to

[8] Adkins also appears to allege facts that suggest they may have intended to bring a failure-to-promote claim in addition to their wrongful termination claim. (Am. Compl. ¶ 30). For instance, Adkins alleges that they were "repeatedly passed over for promotions and full-time positions" which were awarded to "their male counterparts, who had less experience and qualifications than" Adkins and that Adkins "often had to assist their male counterparts in completing basic tasks after the men had been promoted to full-time positions." (Id.). Any such failure-to-promote claim, however, fails as a matter of law because Adkins has not alleged that they ever applied for a promotion to an available full-time position that was ultimately awarded to a male counterpart. See Roberts v. Off. of the Sheriff for Charles Cnty., DKC-10-3359, 2012 WL 12762, at *5 n.11 (D.Md. Jan. 3, 2012) (explaining that to establish a prima facie case of a failure-to-promote discrimination claim, the plaintiff must allege that he applied for the position).

train and assist other employees who has been promoted to more senior positions," including by "assist[ing] . . . male counterparts in completing basic tasks after the men had been promoted to full-time positions," thus evidencing Pharmacann's "higher degree of satisfaction with [Adkins'] work and performance," (id. ¶¶ 13, 30); and (4) "[t]here was . . . discussion at one point with certain" members of management about "relying on [Adkins] to assist . . . in opening a new location in Las Vegas, Nevada," (id. ¶ 13). Pharmacann responds that even accepting all of these facts as true, Adkins fails to state a claim because there is "no way of knowing whether [Adkins'] job performance was satisfactory at the time of their termination." (Mot. at 7). The Court disagrees with Pharmacann.

"Courts evaluate an employee's alleged satisfactory job performance from the perspective of the employer, rather than the employee." McGinnis v. Plamondon Enters., Inc., BAH-25-2138, 2026 WL 221694, at *4 (D.Md. Jan. 28, 2026). To demonstrate satisfactory job performance, the plaintiff must provide "detailed factual information regarding performance." Bynum v. Martin, GJH-16-2067, 2016 WL 7468050, at *5 (D.Md. Dec. 27, 2016) (citing Mason v. Montgomery Cnty., PWG-13-1077, 2015 WL 3891808, at *5 (D.Md. June 23, 2015)). Although plaintiffs must put forth more than conclusory allegations of satisfactory job performance, they "are not required to show that they [were] 'perfect or model' employees." McGinnis, 2026 WL 221694, at *4 (citation modified). To that end, courts in this District have previously concluded, on multiple occasions, that a plaintiff sufficiently pleads satisfactory job performance where he alleges that "he was never informed 'that his job was in jeopardy prior to' an adverse employment action." See id.

(concluding that plaintiff adequately pled satisfactory job performance where he alleged "no record of discipline, counseling[,] or warning of any kind" in the six months prior to the adverse employment action); e.g., Quiroz v. Empirian Vill. of Md., LLC, AAQ-21-02638, 2022 WL 1321594, at *2 (D.Md. May 3, 2022) (collecting cases).

Here, Adkins' allegation that "at all times relevant hereto," they "diligently and expertly performed all tasks and essential duties . . . to [Pharmacann's] expectations and standards . . . without complaint or criticism by [Pharmacann]," (id. ¶ 11) (emphasis added), is analogous to the plaintiff's allegation in McGinnis, which was sufficient to plead satisfactory job performance, see 2026 WL 221694, at *4. Construing the factual allegations in Adkins' favor, it is reasonable to conclude that for the entirety of their five-month employment with Pharmacann, their job performance was satisfactory because they explicitly allege that they did not receive any "complaint or criticism" from Pharmacann prior to their termination. (See Am. Compl. ¶ 11). It is entirely plausible that "[h]ad [Adkins'] job performance been less than satisfactory in the [five]-month period prior to" their termination, Pharmacann "would have given [them] some kind of warning or discipline." See McGinnis, 2026 WL 221694, at *4.

Pharmacann's reliance on Hines v. Leafguard Holding, Inc., LKG-25-306, 2026 WL 776078 at *8 (D.Md. Mar. 19, 2026), to argue otherwise is unpersuasive because Hines is distinguishable. Unlike Adkins, the plaintiff in Hines did not allege that she had no prior record of discipline, complaints, or criticism before she was abruptly terminated. (See Am. Compl. ¶¶ 15–21); Hines, 2026 WL 776078, at *8. Rather, she put forth specific facts, including dates on which she was promoted or received positive reviews, up to September

2022, which the Court found sufficient to have alleged satisfactory job performance until that point. Hines, 2026 WL 776078, at *8–9. The Court concluded that only one of her allegations regarding satisfactory job performance—that "[at] all times material, she was qualified to perform her job duties within the legitimate expectations of Defendant"—was conclusory because it failed to plausibly show that she continued to perform her job satisfactorily in the two months prior to her termination, between September 2022 and November 2022. Hines, 2026 WL 776078, at *8–9 (emphasis added). In contrast, Adkins has explicitly alleged that Pharmacann had no "complaints or criticism" regarding their performance for the entirety of their five-month employment. (Am. Compl. ¶ 11). Therefore, the Court concludes that Adkins has plausibly alleged satisfactory job performance at the time of their termination.

**b. Inference of Unlawful Discrimination**

To survive a motion to dismiss, a plaintiff must also plead sufficient facts to demonstrate that the alleged adverse action—here, the termination—happened "under circumstances giving rise to an inference of unlawful discrimination." See Swaso, 698 F.App'x at 747. A plaintiff may show this by alleging that comparators or other "similarly-situated employees outside the protected class received more favorable treatment." Smallwood v. Mayor & City Council of Balt.: Balt. Police Dep't, MJM-23-2891, 2025 WL 487335, at *10 (D.Md. Feb. 13, 2025) (quoting White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004)).

Plaintiffs relying on comparator evidence to establish an inference of unlawful discrimination, however, must clearly allege facts "identify[ing] the similarly situated

employee" and "establish[ing] a plausible basis for believing [the employee was] actually similarly situated" in all relevant respects. Robinson v. Loudon Cnty. Pub. Schs., 1:16-CV-1604, 2017 WL 3599639, at *4 (E.D.Va. Aug. 18, 2017) (noting that a "general accusation that [the plaintiff] 'was treated differently as a result of'" their gender than their male counterparts is insufficient to survive a motion to dismiss (citing Coleman, 626 F.3d at 191)). Indeed, "a statement that similarly-situated individuals of a different . . . gender were not treated the same as the plaintiff constitutes a 'conclusory allegation [that] is inadequate under Iqbal and Twombly to infer discrimination.'" Hicks v. Anne Arundel Cnty., JKB-20-22, 2020 WL 7624773, at *13 (D.Md. Dec. 22, 2020) (quoting Roberts v. Off. Of the Sheriff for Charles Cnty., DKC-10-3359, 2012 WL 12762, at *6 (D.Md. Jan. 3, 2012)).

While there is no bright-line rule for what makes employees similarly situated under Title VII, courts frequently consider whether the individuals: (1) held the same job descriptions and responsibilities; (2) were subject to the same standards; (3) reported to the same supervisor; (4) had comparable education and experience; and (5) whether plaintiff had differentiating or mitigating circumstances that would distinguish the employer's treatment of them. See Spencer v. Va. State Univ., 919 F.3d 199, 207 (4th Cir. 2019); see also Cowgill v. First Data Techs., Inc., 41 F.4th 370, 381 (4th Cir. 2022). Simply reciting these legal elements, however, is not enough; plaintiffs must identify the proposed comparator. See Yuzhakov v. Charles River Lab'ys, Inc., DKC-25-2299, 2026 WL 2083234, at *12 (D.Md. July 20, 2026).

Here, Adkins' factual allegations regarding similarly situated male comparators, (Am. Compl. ¶¶ 32–34), "are far too skeletal to support a reasonable inference that [Adkins] suffered [gender] . . . discrimination." West v. Mayorkas, No. JKB-23-1661, 2024 WL 3878375, at *10 (D.Md. Aug. 20, 2024). Specifically, Adkins alleges that "other men had been allowed to miss months of work to attend rehabilitation on multiple occasions and their positions had been held open for them" while Adkins was terminated after they began volunteering for AmeriCorps even though they had "indicated to [Pharmacann] that [they were] still willing to work." (Am. Compl. ¶¶ 18–20, 28–29). These unidentified other men, according to Adkins, "were, upon information and belief, Budtenders of the same level of responsibility and duties as [Adkins]," "were, supposedly, subject to the same standards and expectations as [Adkins]," "were subject to the same management staff and supervisors as [Adkins], including [Adkins'] supervisor Thomas Maytas," and "[t]he experience and qualifications" of these men "were at approximately the same level as [Adkins]." (Id. ¶¶ 32–33).

These statements constitute "little more than 'legal conclusion[s] couched as factual allegations,'" see West, 2024 WL 3878375, at *10, because the Amended Complaint lacks key facts without which the Court cannot substantiate the similarity of the proposed comparators to Adkins. For instance, the Amended Complaint is silent as to the names of the proposed male comparators, whether these men requested and received approval for a long leave of absence to attend rehabilitation, whether they had a qualified disability that mandated Pharmacann to accommodate their long leaves of absence, and whether certain benefits—such as long leaves of absence—were available to full-time employees but not

to part-time employees like Adkins. These facts are crucial because they likely constitute "differentiating or mitigating circumstances that would distinguish . . . [Pharmacann's] treatment of [Adkins]" compared to its treatment of the proposed male comparators. See Cowgill, 41 F.4th at 381.

Moreover, contrary to Adkins' argument that they need not provide "specific details and names . . . at the pleading stage," (Opp'n at 5), it is well-established that "unidentified [male] employees cannot serve as comparators," see Yuzhakov, 2026 WL 2083234, at *12; Parker v. Child.'s Nat'l Med. Ctr., ELH-20-3523, 2021 WL 5840949, at *12 (D.Md. Dec. 9, 2021) (concluding that plaintiff's allegation that "non-pregnant co-workers . . . were able to work from home" would have been conclusory without the "specificity in the [EEOC] Charge," which identified and named a proposed comparator); West, 2024 WL 3878375, at *10 (finding amended complaint deficient because it did not "identify the names, titles, responsibilities, or supervisors of the alleged comparators"). Because Adkins has failed to show that they were similarly situated to the proposed male comparators, and their allegations amount to only "'naked assertion[s]' devoid of [any] further factual enhancement," they "cannot survive dismissal under Federal Rule 12(b)(6)." Hicks, 2020 WL 7624773, at *13 (citing Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555, 557)). Accordingly, the Court will grant Pharmacann's Motion as to Count I.

**2. Count II - Disability Discrimination**

Next, Adkins brings a disability discrimination claim under the ADA and MFEPA. (Am. Compl. ¶¶ 37–49). The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability" in the workplace. 42 U.S.C. § 12112(a); Elledge v.

Lowe's Home Ctrs., LLC, 979 F.3d 1004, 1009 (4th Cir. 2020). To establish a claim for intentional disability discrimination under the ADA, plaintiffs must show that they: (1) have a disability, (2) are a "qualified individual" for the employment in question, and (3) their employer took an adverse employment action against them under circumstances giving rise to an inference of unlawful discrimination. Burnett v. BJ's Wholesale Club, 722 F.Supp.3d 566, 575 (D.Md. 2024).

As to the first element, it is undisputed that Adkins has a disability, which Pharmacann reasonably accommodated by allowing Adkins to take "breaks at reasonable times" and providing them with "a stool to sit." (Am. Compl. ¶ 15).

As to the second element, the Fourth Circuit has held that a qualified individual "is one who, with or without reasonable accommodation, can perform the essential functions of the employment position he holds or desires." Lee v. Coca-Cola Bottling Co-Silver Spring, LKG-24-929, 2026 WL 2017240, at *3 (D.Md. July 13, 2026) (citing Elledge, 979 F.3d at 1009). The facts which support the Court's conclusion that Adkins was satisfactorily performing their job for the purposes of their gender discrimination claim also support the Court's conclusion that Adkins was a "qualified individual" under the ADA—namely, Adkins' numerous five-star reviews and the absence of any "complaint or criticism" from Pharmacann regarding Adkins' performance during their five-month employment suggest that they were qualified for the role of a Budtender. (See id. ¶¶ 11–12).

Finally, as to the third element, Adkins' termination "indisputably constitute[s] an adverse employment action" under the ADA and MFEPA. See King v. Rumsfeld, 328 F.3d

145, 151 (4th Cir. 2003). Accordingly, the Court's analysis will focus on whether Pharmacann terminated Adkins under circumstances giving rise to an inference of unlawful discrimination based on Adkins' disability.

**a. Inference of Unlawful Discrimination**

Plaintiffs bringing a claim for intentional disability discrimination must allege facts demonstrating that the employer took an adverse employment action against them "under circumstances . . . giv[ing] rise to an inference of unlawful discrimination." Swaso, 698 F.App'x at 748 ("[A]dverse employment actions under [the] ADA . . . are analyzed under the Title VII standard."); Reid v. MJ Logistics, LLC, No. JMC-22-3112, 2024 WL 2302320, at *11 (D.Md. May 21, 2024) (citation modified). The employer's discriminatory intent is key, and "liability hinges on whether the protected trait motivated the employer to take the adverse action." Dobson v. Harnden Grp. LLC, No. JKB-18-3624, 2019 WL 1242527, at *5 (D.Md. Mar. 18, 2019). Such discriminatory intent may be shown through either "direct or indirect means." Id.

Pharmacann contends that Adkins' intentional disability discrimination claim fails because (1) they do not identify a legally cognizable comparator, and (2) the Amended Complaint concedes that they were terminated because they did not work a shift for several days. (Mot. at 10). Adkins counters that the law does not require them to rely on comparator evidence to allege an inference of unlawful discrimination because they have alleged facts demonstrating direct evidence of discrimination by Pharmacann's management, (Reply at 7)—namely, that management's repeated criticism of Adkins "at meetings for needing to use a stool as a reasonable accommodation," calling them "unprofessional" for doing so,

and refusing to provide "alternative accommodations that would have avoided customers from seeing [them] sitting down" constitutes direct evidence of discrimination. (Am. Compl. ¶¶ 43, 47). The Court disagrees with Adkins.

"Direct evidence is 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the" adverse employment action. Bandy v. City of Salem, 59 F.4th 705, 711 (4th Cir. 2023). To successfully allege direct evidence of discrimination based on derogatory comments—as Adkins attempts to do here—the plaintiff must plead sufficient facts demonstrating that the comments are "(1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the complained-of adverse employment action; (3) made by an individual with authority over the employment decision at issue; and (4) 'related to the employment decision at issue.'" Id. (citing Jackson v. Cal-Western Packaging Corp., 602 F.3d 374 (5th Cir. 2010)). As to the third element, "[e]mployers are not vicariously liable for all of their subordinate employees' discriminatory actions." Id. at 710. Rather, "employers are responsible only for acts of the 'actual decisionmaker' behind an adverse employment action, meaning the individual who 'was . . . principally responsible' for" the adverse employment action at issue. Id. As to the fourth element, the facts must show a "nexus between the offensive remark and [the employer's] decision." Dobson, 2019 WL 1242527, at *5 (citing Sonpon v. Grafton Sch., Inc., 181 F.Supp.2d 494, 499 (D.Md. 2002)).

Here, management's repeated criticism of Adkins—including by calling them "unprofessional" for needing to use a stool as a reasonable accommodation—clearly relates

to their disability and thus implicates their membership in a protected class under the ADA. (See Am. Compl. ¶¶ 16, 43–44). Adkins has not, however, alleged any facts as to when management made these comments, whether the comments were proximate in time to their termination on October 16, or whether members of the management who made the offensive remarks had any authority or influence over Pharmacann's decision to terminate Adkins.[9] In addition, nothing in the Amended Complaint suggests a nexus between management's offensive remarks about Adkins' use of a reasonable accommodation and Pharmacann's ultimate decision to terminate them.

Management's remarks—as alleged—are plainly offensive and "distasteful"; ultimately, however, employer liability hinges on "the decision maker's intent . . . and in the absence of a clear nexus" between the offensive remarks and Adkins' termination, "the materiality of stray or isolated remarks is substantially reduced." Kiver v. Fed. Bus. Couns., Inc., No. BAH-23-3398, 2024 WL 3424059, at *7 (D.Md. July 16, 2024) (quoting Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 300 (4th Cir. 2010)). Accordingly, the Court will grant Pharmacann's Motion as to Count II.

**3. Count III – ADA Retaliation**

Finally, Adkins brings an ADA retaliation claim (Am. Compl. ¶¶ 8–9). The ADA provides that "[n]o person shall discriminate against any individual because such

---

[9] To the extent Adkins attempts to bring a "cat's paw theory of liability," that too fails because Adkins has not alleged that the discriminatory animus of the members of management who made the offensive remarks influenced the ultimate decision-maker to terminate Adkins. See Staub v. Proctor Hosp., 562 U.S. 411, 415 (2011). In fact, the Amended Complaint is wholly bereft of any facts regarding who at Pharmacann made the ultimate decision to terminate Adkins.

individual . . . made a charge . . . under this Chapter." 42 U.S.C. § 12203(a). Retaliation claims under the ADA and MFEPA are analyzed under the same standard as Title VII retaliation claims. See A Soc'y Without a Name v. Virginia, 655 F.3d 342, 352 (4th Cir. 2011) (Motz, J., concurring in part and dissenting in part) (ADA); Hawkins v. Leggett, 955 F.Supp.2d 474, 497 (D.Md. 2013) (MFEPA).

To prevail on a retaliation claim, Adkins "must either offer sufficient direct and indirect evidence of retaliation, or proceed under a burden-shifting method." See Rhoads v. F.D.I.C., 257 F.3d 373, 391 (4th Cir. 2001). To proceed under the burden-shifting framework, Adkins must allege facts demonstrating that (1) they engaged in a protected activity, (2) their employer acted adversely against them, and (3) a causal link exists between the protected activity and the adverse action. Rhodes v. Comcast Cable Commc'ns Mgmt., LLC, No. GLR-14-1824, 2016 WL 4376653, at *11 (D.Md. Aug. 17, 2016) (citation modified).

The Parties disagree only as to whether Adkins has adequately pled causation. For the reasons explained below, the Court finds that Adkins has failed to show a causal connection between their protected activity and their termination.

**a. Causation**

Plaintiffs may establish causation between their protected activity and the employer's adverse action by either (1) demonstrating close temporal proximity between the protected activity and the adverse action, or, in the absence of close temporal proximity,

by (2) alleging other evidence of retaliatory animus during the intervening period. See Wilson v. City of Gaithersburg, 121 F.Supp.3d 478, 485 (D.Md. 2015).

Pharmacann contends that Adkins has failed to establish causation because the Amended Complaint is silent as to the temporal proximity between the submission of Adkins' reasonable accommodation request and their termination on October 16. (Mot. at 11). Adkins disagrees, alleging that "there existed a temporal and causal link between" their protected activity and Pharmacann's decision to terminate them because their ongoing, continuous use of the reasonable accommodation, until their last day of employment, combined with management's repeated criticism of their need to use a reasonable accommodation, suggests a "reasonable inference that [Adkins'] protected activity was causally linked to" Pharmacann's decision to terminate their employment. (Am. Compl. ¶¶ 54–58; Opp'n at 7–8). For reasons explained below, Adkins' argument is unpersuasive.

The temporal proximity aspect of the "causal . . . element of retaliation asks . . . whether the time that elapsed 'between the employer's knowledge of protected activity and the alleged retaliation' is sufficiently close to support a causal relationship," and not "whether the last instance of protected activity occurred in close temporal proximity to the adverse action." E.g., Perkins v. Univ. of Md., Balt. Sch. of Nursing, No. RDB-24-1688, 2025 WL 1371486, at *9 (D.Md. May 12, 2025) (emphasis added). Therefore, that Adkins' last instance of protected activity—using their reasonable accommodation on October 13—occurred shortly before their termination on October 16, does not help Adkins establish causation for the purposes of their ADA retaliation claim.

Moreover, the Amended Complaint lacks any information as to when Pharmacann first learned about Adkins' reasonable accommodation request or when Adkins submitted their reasonable accommodation request. Without these facts, Adkins cannot plausibly allege temporal proximity between their protected activity and their termination.

Adkins has also not provided any other evidence of retaliatory animus sufficient to establish causation in the absence of temporal proximity. See Wilson, 121 F.Supp.3d at 485. As previously explained, it is unclear from the Amended Complaint whether the members of management who criticized Adkins and called them unprofessional are the same individuals who were involved in or otherwise influenced Pharmacann's decision to terminate Adkins. The parties have not cited—and the Court has not found—any case law where a plaintiff successfully established retaliatory animus based on another employee's offensive remarks related to the plaintiff's protected status absent specific facts showing that the employee making the offensive remarks played a part in the employer's decision to terminate the plaintiff.

Furthermore, Adkins' naked assertion—that Pharmacann terminated them because it "no longer wished to provide or deal with" their approved reasonable accommodation, which it viewed as unprofessional, (see Am. Compl. ¶¶ 56, 58), is also entirely unsupported by any facts in the Amended Complaint. In fact, Pharmacann's undisputed "history of reasonably accommodating [Adkins'] disability," along with facts suggesting that Adkins was terminated not because of their disability but because of their failure to schedule a shift for three days, (see Am. Compl. ¶¶ 15, 42, 53), seriously undermines the plausibility of Adkins' retaliation claim. See Apedjinou v. Inova Health Care Servs., No. 1:18-CV-287,

2018 WL 11269174, at *13 (E.D.Va. Dec. 19, 2018); Smith v. CSRA, 12 F.4th 396, 417 (4th Cir. 2021) (collecting cases). Accordingly, the Court will grant Pharmacann's Motion as to Count III.

## III. CONCLUSION

For the foregoing reasons, the Court shall grant Pharmacann's Motion to Dismiss (ECF No. 10). A separate Order follows.

Entered this 12th day of November, 2026.

/s/
George L. Russell, III
Chief United States District Judge